**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**BRIAN CHANCE BROWN**                                              **PLAINTIFF**

**VS.**                                          **4:08CV00335**

**UNION PACIFIC RAILROAD COMPANY**                              **DEFENDANT**

## <u>ORDER</u>

Pending is Defendant's motion for summary judgment. (Docket # 26).   Plaintiff has responded and Defendant has filed a reply.  For the reasons set forth herein, Defendant's motion is denied.

<u>Brief Facts</u>

Plaintiff, Brian Chance Brown ("Brown"), was hired by Defendant, Union Pacific Railroad Company ("UP"), as an electrician apprentice, in 1996.  At the time of his hire and throughout his employment, Brown was a member of the Arkansas Air National Guard ("the Guard").  Brown was terminated November 16, 2007.  Brown filed this lawsuit on April 14, 2008, claiming that his discharge violated the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§4301 *et. seq*. ("USERRA") and the Arkansas Military Service Protection Act, Ark. Code Ann. §§12-62-801 *et. seq*. ("the Arkansas Act").  UP denies that it was motivated by any unlawful or improper consideration when it discharged Brown and claims that Brown was discharged for excessive absenteeism and for dishonestly and fraudulently reporting the reasons for many of his absences.

UP contends that it afforded Brown time off to fulfill his military service obligations with the Guard and that throughout Brown's tenure with UP, it actively supported - as one of its "top

companies" - the program known as "Employers Support of the Guard and Reserve" ("ESGR").

UP claims that Brown was counseled on multiple occasions in 2006 and 2007 regarding the need

to improve his absenteeism record.  UP contends that Brown was absent from work on thirty-six

(36) days between January 29, 2007 and October 1, 2007; late to work on fifteen(15) days

between January 26, 2007 and September 13, 2007; and  left work early on fourteen (14) days

between January 4, 2007 and September 19, 2007.

On October 9, 2007, UP notified Brown and the International Brotherhood of Electrical

Workers ("IBEW"), his collective bargaining representative, that an investigatory hearing would

be conducted on October 30, 2007 concerning Brown's absenteeism and the alleged false

reporting of the reasons for some of his absences. Brown was also notified that if he was found to

have violated Company policies with regard to his absences, he would be subject to permanent

dismissal.

Following the hearing, Hearing Officer Diana Anderson notified Brown that she found

substantial evidence of violations and advised him that he had been assessed a Level 5

Discipline, discharge effective November 16, 2007.  UP contends that Brown appealed his

discharge to Public Law Board No. 7001.  Brown acknowledges that a review occurred but

denies that he appealed the decision. In its award upholding Brown's discharge, issued

November 25, 2008, Public Law Board No. 7001 found that Plaintiff's "excessive absences"

over "a significant period of time" had created "chaos in the work place and place[d] undue

hardships on the Carrier and also on fellow employees  . . . inconvenienced by his absences." The

Board also found that Brown  "on occasions was less than honest with the Carrier regarding the

reasons for his absences or tardiness."

2

Brown disputes UP's version of events and claims that his discharge was motivated by his National Guard assignments. Brown claims that the series of events which led to his discharge began in May 2006 when Steve Sparr, Senior Director, instructed Brown to stop volunteering for National Guard assignments or submit a letter of resignation. In November 2006, Sparr again spoke to plaintiff about his absences in a discussion relating to Brown's additional requirements for being a member of the air crew in the Guard. Brown claims that in August 2006, his supervisor, Mike Starr, told him that his absences for military duty hurt the team. Paula Corpier, the Assistant Director of Operations for UP, told Brown to stop "guard bumming" and testified that his "voluntary" absences for Guard duty were not acceptable. Brown also claims that in September, 2006 he asked to use Family Medical Leave time to take care of his children's medical needs. UP informed Brown that he did not have the requisite hours to qualify for FMLA leave. Brown contends that UP refused to count the time he spent "volunteering" for service. If UP had counted the service hours, Brown would have qualified for leave.

UP argues that Plaintiff's claim is precluded by the disposition of his appeal to the Public Law Board and alternatively, Brown has no evidence by which to sustain his prima facie burden or to rebut UP's legitimate, non-discriminatory reason for his discharge. Brown argues that UP failed to establish that his claims are barred by the decision of the Public Law Board and that a jury could reasonably infer that his National Guard duty or status was a factor which motivated UP to discharge him.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial -- whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact because
> they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute
> exists on any material fact, it is then the respondent's burden to set
> forth affirmative evidence, specific facts, showing that there is a
> genuine dispute on that issue.  If the respondent fails to carry that
> burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

<u>Discussion</u>

UP argues that the award of Public Law Board No. 7001 precludes re-litigation of the material facts underlying Plaintiff's discharge based on 45 U.S.C. §158(l) and §159(Second). Section 158(l) provides that the agreement to arbitrate: "Shall provide that the award, when so filed, shall be final and conclusive upon the parties as to the facts determined by said award and as to the merits of the controversy decided. . . ."  Section 159(Second) establishes: "An award acknowledged and filed as herein provided shall be conclusive on the parties as to the merits and facts of the controversy submitted to arbitration . . . ."  Based upon the findings of the Public Law Board, UP argues that Brown should be precluded from re-litigating the fact that his "atrocious attendance record was a clear and convincing violation of UP's Attendance Policy; the fact that he was dishonest with the Company about the reasons for his poor attendance; and the fact that the decision to discharge him for those acts and omissions was fairly and appropriately reached by the Company."  The Court disagrees.

Generally, when a claim is brought, the elements of which require an interpretation of a collective bargaining agreement provision and there has already been a binding arbitration regarding that provision, the arbitration decision is binding on the subsequent litigation.  *See Summerville v. Trans World Airlines*, 219 F.3d 855 (8th Cir. 2000)(plaintiff precluded from re-litigating issues regarding certain job requirements that involved the interpretation and application of a collective bargaining agreement which had been determined by an arbitration board; the Board has the exclusive statutory authority to decide disputes regarding the interpretation of the collective bargaining agreement).  The issues central to this case require an examination of the conduct and motives of the parties and do not require an interpretation of the

5

Collective Bargaining Agreement.  "Claims that revolve around the conduct or motive of the parties generally are not preempted because they do not require interpretation of the collective bargaining agreement." *Thomas v. Union Pac. R.R.Co.*, 308 F.3d 891, 893 (8th Cir. 2002) *(citations omitted).*

Further, when a claim is brought pursuant to a federal statute or independent source, the claim is not precluded even if there was previous arbitration.  *See, McDonald v. West Branch*, 466 U.S. 284, 292 (1984) (holding arbitration does not preclude a subsequent 42 U.S.C. § 1983 action; "a federal court should not afford res judicata or collateral-estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement."); *Barrentine v. Arkansas-Best Freight System, Inc*., 450 U.S. 728 (1981) (holding arbitration has no preclusive effect on a claim under the Fair Labor Standards Act) and *Alexander v. Gardner-Denver Company*, 415 U.S. 36 (1974) (holding arbitration has no preclusive effect on a Title VII claim).

Moreover, the legislative history of the USERRA provides further support that a prior arbitration decision has no preclusive effect in a suit based on an individual's right not to be discriminated against based on military reserve status.

> [USERRA] reaffirm[s] a general preemption as to State and local laws and ordinances, as well as to employer practices and agreements ... Moreover, this [ ] would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law.

H.R.Rep. No. 103-65(I), at 20 (1993) (internal citations omitted).

Brown asserts rights and privileges afforded him by federal and state law to be free from

6

discrimination based upon his military status.[1]  This issue was not before the Public Law Board.

The Public Law Board examined the following claim: "That the Union Pacific Railway Company

violated the Controlling Agreement, particularly Rules 25 and 37, but not limited to, when . . .

Brian Chance Brown was unjustly and arbitrarily assessed a level 5 Discipline and dismissal on

November 16, 2007 . . . ."  Relying on the transcript and exhibits of the investigation, the Board

upheld Brown's discharge.  Brown did not appear before the Public Law Board.  The conduct

and motivation of the parties with respect to Brown's military status and his federal and state

rights with respect to that status was not reviewed by the Board.  Accordingly, the Court finds

that the decision of the Public Law Board has no preclusive effect on these proceedings.

USERRA's anti-discrimination provision found in Section 4311 provides: "A person who

is a member of . . . a uniformed service shall not be denied initial employment, reemployment,

retention in employment, promotion, or any benefit of employment by any employer on the basis

of that membership. . . . "  38 U.S.C. §4311(a).  In order to establish a violation of USERRA,

Brown must make " 'an initial showing ... that military status was at least a motivating or

substantial factor in the [employer's] action.' "  *Maxfield v. Cintas Corp*., 427 F.3d 544 (8th Cir.

2005)(citations omitted).  "If the employee makes such a showing, the [employer] must prove, by

a preponderance of evidence, that the action would have been taken despite the protected status.

*Id.*

_____

[1]The Arkansas Military Service Protection Act instructs the Court: "When construing this subchapter as it relates to employment matters, a court may look for guidance to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 et seq., as in effect on January 1, 2005, as well as federal decisions interpreting the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 et seq., as in effect on January 1, 2005."  Ark. Code Ann. § 12-62-804.

Here the evidence supports an inference that Brown's military status was a "motivating factor" in UP's decision to terminate his employment.  The evidence demonstrates that Steve Sparr instructed Brown to stop volunteering for National Guard assignments or submit a letter of resignation; spoke to Brown about his absences in a discussion relating to Brown's additional requirements for being a member of the air crew in the Guard; and, told him to stop "guard bumming."  Brown's supervisor, Mike Starr, told him that his absences for military duty were hurting the team and Paula Corpier told Brown to stop "guard bumming."

UP contends that Brown was discharged for excessive absenteeism and for dishonestly and fraudulently reporting the reasons for many of his absences. Based upon the record, the Court finds that a question of fact exists as to whether UP would have discharged Brown despite his protected status.  Diane Anderson, the Hearing Officer, summarized her investigative findings in a Closeout Letter. Anderson repeatedly referred to Brown's military training and duties and distinguished between those hours considered "mandatory" as opposed to "voluntary."  Anderson found Brown's testimony inconsistent and stated that he "failed to provide anything to show that he was <u>required</u> to perform the military service that kept him away from his regular assignment." (Emphasis in original).  Further, Ms. Anderson testified that she did not make any inquiries about Brown's National Guard status as it related to his attendance because it was not within the "purview" of what she looks at as a hearing officer and it was not within anyone's purview of which she was aware.

The Court finds a genuine issue of material fact exists as to whether Brown's  military status was at least a motivating or substantial factor in the decision to discharge him and whether the action would have been taken despite his protected status. For these reasons, Defendant's

8

motion for summary judgment is denied.

IT IS SO ORDERED this 24th day of April, 2009.

_____
James M. Moody
United States District Judge